**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**


| | | |
|---|---|---|
| Anette Davis, Executor of the Estate of | : | Case No. 3:14 CV 113 |
| Peter W. Davis, deceased, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Mary Ann Drake, et. al., | : | **MEMORANDUM AND** |
| | : | **ORDER** |
| Defendants. | : | |
| | : | |

## I.  INTRODUCTION

The parties have consented to the jurisdiction of the undersigned Magistrate to conduct all proceedings and enter final judgment in this action governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et. seq.*  The Complaint includes state law claims for unjust enrichment, breach of contract, and conversion (Docket No. 1).  The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367(a).  Pending before this Court are Plaintiff Anette Davis' ("Plaintiff") Motion to Quash Subpoena With Memorandum In Support (Docket No. 60), Defendant Mary Ann Drake's ("Defendant") Opposition (Docket No. 62), and Plaintiff's Reply (Docket No. 64).  For the reasons set forth below, the undersigned Magistrate grants  Plaintiff's Motion to Quash.

## II.  FACTUAL BACKGROUND

Peter W. Davis ("Decedent" or "Mr. Davis") retired as an hourly employee from General Motors' ("GM") in 2007 (Docket No. 49, p. 2 of 10).  By virtue of Mr. Davis' employment, he was entitled to certain

collectively bargained benefits during his retirement under a Life and Disability Benefits Program for Hourly Employees.  The benefits package  consisted of a group life insurance issued by Metropolitan Life Insurance Company ("MetLife")(a welfare benefit plan), and a Personal Savings Plan (a pension benefit plan), under ERISA (Docket No. 13, p. 2 of 9; Docket No. 14, Attachment 1, p. 3 of 10).  Mr. Davis married Defendant Mary Ann Drake on December 26, 1989 (Docket No. 49, p. 2 of 10).  A Designation of Beneficiary form dated January 26, 1990, lists Defendant as the sole beneficiary to Mr. Davis' Life and Disability benefits (Docket No. 50, p. 1 of 7; Docket No. 14, Attachment 3).

On July 11, 1995, Defendant and Mr. Davis divorced (Docket No. 1, Attachment 1).  The Final Judgment Entry of Divorce ("divorce decree") entered by the Ohio Domestic Relations Court included certain provisions reserving Mr. Davis' title and interest in his pension and IRA accounts, and the parties' respective rights in their own life insurance benefits and personal savings accounts (Docket No. 1, Attachment 1, pp. 14-15 of 15).  Despite the divorce, Mr. Davis never removed Defendant as the beneficiary of  his Life and Disability Benefits (Docket No. 49, p. 2 of 10; Docket No. 63, p. 4 of 13).  Plaintiff Anette Davis, as the executor of Mr. Davis' estate, filed this action seeking Mr. Davis' Life and Disability Benefits.

### III. PROCEDURAL HISTORY

On December 18, 2013, Plaintiff filed a Verified Complaint For Declaratory Judgment, Damages, and Injunctive Relief against Defendants Mary Ann Drake, Metlife, and GM in the Lucas County Court of Common Pleas, asserting state law claims and requesting injunctive relief, related to benefits offered by GM and through MetLife to Peter W. Davis, deceased (Docket No. 1, Attachment 1).

A Joint Notice of Removal was filed on January 17, 2014, in the United States District Court for the Northern District of Ohio, Western Division, removing the case from the Lucas County Court of Common Pleas to federal court on grounds that the complaint included ERISA claims and benefits governed by federal law

2

(Docket No. 1).

On February 7, 2014, Defendant Mary Ann Drake filed her Answer generally denying Plaintiff's claims and raising affirmative defenses (Docket No. 9).  Defendant also asserted a counterclaim against Plaintiff arguing that she is entitled to the full payment of the benefits as the named beneficiary (Docket No. 9, p. 3 of 4).

On February 26, 2014, Plaintiff filed its Answer to Defendant Drake's counterclaims generally denying the allegations and asserting  affirmative defenses  (Docket No. 18).

On July 3, 2014, the parties consented to the jurisdiction of the undersigned Magistrate pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73 (Docket Sheet, 7/3/2014).

On October 9, 2014, Defendant filed a Notice of Service of Subpoena on the "Keeper of Records" for U.A.W. Legal Plan, located at 3360 West Laskey Road, Toledo, Ohio 43623, seeking:

> . . . any and all documents related to the preparation of a Will and/or any other estate planning documents for Peter W. Davis, Deceased, to the extent those documents were prepared in a period between January 1, 2012, and August 7, 2013.  This request includes, but is not limited to, any Wills, Powers of Attorney, notes or any other matters provided to you by Peter W. Davis in contemplation of preparing the previously mentioned documents.

(Docket Nos. 57 & 57-1).  On October 13, 2014, Plaintiff filed its Motion to Quash Subpoena (Docket No. 60). Defendant filed its Memorandum in Opposition to Plaintiff's Motion to Quash on October 15, 2014 (Docket No. 62), and Plaintiff filed its Reply on October 23, 2014 (Docket No. 64).

## IV. ANALYSIS

### A.   ARGUMENTS

Plaintiff asserts in its Motion To Quash that the materials Defendant seeks from the U.A.W. Legal Plan concerning Mr. Davis are protected by attorney-client privilege (Docket No. 60).  Defendant contends that to the extent its subpoena seeks privileged information, Plaintiff, as Mr. Davis' legal representative, has waived the privilege by referring to and including Mr. Davis' will in court filings.  Consequently,  Defendant argues

that Mr. Davis' entire estate plan has been placed at issue (Docket No. 62, p. 2 of 4).  Plaintiff disagrees and argues in its Reply that it did not reveal any substantive legal advice by referring to Mr. Davis' updated estate plan in April 2013 (Docket No. 64, pp. 1-2 of 3).  Moreover, Plaintiff argues that the privilege has not been waived because Mr. Davis' will has not been contested and no cause of action has been brought concerning his estate planning (Docket No. 64, p. 3 of 3).

**B.**     **LEGAL STANDARDS**

Subpoenas are governed by FED. R. CIV. P. 45 and are "subject to the general relevancy standard applicable to discovery under FED. R. CIV. P. 26(b)(1)." *Laethem Equip. Co. v. Deere & Co.*, 2007 WL 2873981, at *4 (E.D. Mich. 2007)(citing *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998)(internal quotation omitted)).  Pursuant to FED. R. CIV. P. 45(d)(3)(A), a court must "quash or modify a subpoena that: (1) fails to allow a reasonable time to comply; (2) requires a person to comply beyond the geographical limits specified in Rule 45(c); (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A) (West 2014).  "The party seeking to quash a subpoena bears the ultimate burden of proof" *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011)(citing *White Mule Co. v. ATC Leasing Co.* LLC, 2008 WL 2680273, at *4 (N.D. Ohio 2008)).

**1.**     **THE ATTORNEY-CLIENT PRIVILEGE**

The Supreme Court of the United States has observed that "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)(citation omitted).  The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Id.*  "The privilege recognizes that sound legal advice or

advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.*

The rule of privilege is codified in the Federal Rules of Evidence, which provides that "[t]he common law – as interpreted by the United States courts in the light of reason and experience – governs a claim of privilege." FED. R. EVID. 501 (West 2014). The rule is also applicable where a case includes pendent state law claims. *See Keen v. Hancock Cty. Job & Family Servs.*, 581 F.Supp.2d 893 (N.D. Ohio 2008)(citing *Hancock v. Dodson*, 958 F.2d 1367, 1372-1373 (6th Cir. 1992)). Since this case presents a federal question, "the applicability of a privilege must, accordingly, be ascertained by reference to federal statutes and the common law." *General Motors Corp. v. Dir. of Nat. Inst. for Occupational Safety & Health, Dept of Health, Educ. & Welfare*, 636 F.2d 163, 165 (6th Cir. 1980); *Fisher v. City of Cincinnati*, 753 F.Supp. 692, 694 (S.D. Ohio 1990). The rule of privilege "applies at *all* stages of *all* actions, cases, and proceedings" *In re Lott*, 424 F.3d 446, 452 (6th Cir. 2005)(quoting FED. R. EVID. 1101(c)(emphasis in original)).

A party asserting privilege "bears the burden of establishing that the attorney-client privilege or work product privilege applies." *Corbis Corp. v. Starr*, 719 F.Supp.2d 843, 846 (N.D. Ohio 2010). In the Sixth Circuit, the essential elements for the attorney-client privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)(*quoting United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir.), *cert denied*, 377 U.S. 976 (1964)). Ohio's elements for the attorney-client privilege are similar. *See State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 542 (Ohio 2009)("The [attorney-client] privilege applies when legal advice of any kind is sought from the legal advisor in that capacity and the client's confidential communications relates to that purpose.")(citation omitted); *see also* OHIO REV. CODE

5

ANN. § 2317.02 (West 2013); *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 177 n. 3 (S.D. Ohio 1993)(observing that "[t]here appears to be no material difference between Ohio's attorney-client privilege and the federal common law privilege.")(citing *State v. Post*, 32 Ohio St.3d 380, 385 (Ohio 1987)).

The privilege is not, however, an absolute privilege and "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *United States v. Skeddle*, 989 F.Supp. 890, 900 (N.D. Ohio 1997)(citation and internal quotation marks omitted). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390; *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 492-93 (M.D.N.C. 2008).

Defendant's subpoena served on the on U.A.W. Legal Plan seeks any and all documents related to the preparation of a Will and or any other estate planning documents for Mr. Davis between the dates of January 1, 2012 and August 7, 2013, including wills, powers of attorney, notes or any other materials provided to U.A.W. Legal Plan by Mr. Davis in preparation of those documents (Docket No. 57, Attachment 1, p. 3 of 3).  Since the attorney-client privilege attaches to both the communications between an attorney and client as well as the information provided by the client to the lawyer to enable her to carry out the legal representation, it necessarily follows that the information Defendant seeks is protected attorney-client information. Absent waiver, Defendant's subpoena triggers this Court's obligation to modify or quash Defendant's subpoena pursuant to FED. R. CIV. P. 45(d)(3)(A).

### a.    WAIVING THE ATTORNEY-CLIENT PRIVILEGE

The party claiming an attorney-client privilege not only bears the burden of proving that the privilege applies, but must also show that the privilege has not been waived. *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 35 F.Supp.2d 582, 590 (N.D. Ohio 1999).  "The existence of the privilege and the

6

applicability of any exception to the privilege is a question of fact for the judge." *Id.* at 591.  The attorney-client

privilege "may be waived expressly or by implication in several ways." *In re Lott*, 424 F.3d at 452.

"The attorney-client privilege is waived by voluntary disclosure of private communications by an

individual or corporation to third parties." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999); *see also*

*In re Grand Jury Proceedings Oct. 12,* 1996, 78 F.3d 251, 255-56 (6th Cir. 1996)(finding waiver where client

revealed the substance of his attorney's advice concerning elements of a marketing plan to government

investigators*); Eagle Compressors, Inc. v. HEC Liquidating Corp*., 206 F.R.D. 474, 477 (N.D. Ill.

2002)(finding waiver where defendant disclosed a letter containing confidential legal advice between defendant

and defendant's counsel to the plaintiff.).  "[A] client may waive the privilege by conduct which implies a

waiver of the privilege or a consent to disclosure." *In re Lott*, 424 F.3d at 452 (*quoting In re Columbia/HCA*

*Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002)(internal quotations omitted)).

Courts have also found waiver where "a client attacks the quality of his attorney's advice through, for example,

a civil defendant's pleading of an advice-of-counsel defense or a criminal defendant's appeal on grounds of

inadequate legal representation." *In re Lott*, 424 F.3d at 453 (*quoting Developments in the Law-Privileged*

*Communications, Implied Waiver*, 98 HARV. L. REV. 1629, 1638 (1985)); *Hunt v. Blackburn,* 128 U.S. 464,

470-471 (1888)(finding waiver "[w]hen Mrs. Blackburn entered upon a line of defense which involved what

transpired between herself and [her lawyer]"); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir.

1992)(finding that to the extent Pennzoil's claim relied upon the advice of counsel to argue that its tax claim

was reasonable, Pennzoil waived the attorney-client relationship to those communications).

In cases where the attorney's legal advice is made an issue in the case, the Third Circuit has detailed the

context of the implied waiver keenly observing that in those types of cases:

> [T]he client has made the decision and taken the affirmative step in the litigation to place the
> advice of the attorney in issue. Courts have found that by placing the advice in issue, the client

has opened to examination facts relating to that advice. Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication. *North River Insurance Co[.] v. Philadelphia Reinsurance Corp[.]*, 797 F.Supp. 363, 370 (D.N.J.1992); *Pittston Co[.] v. Allianz Insurance Co.*, 143 F.R.D. 66, 71 (D.N.J.1992).

*Rhone-Poulenc Rorer, Inc.*, 32 F.3d at 863.  "Implied waivers are consistently construed narrowly. . . . [as] [c]ourts must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005).  Courts from around the country have also recognized implied waiver under similar circumstances. *See Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989)(noting "[t]he great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party")(citation and internal quotation marks omitted); *Sedco Inter., S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)(recognizing that courts have found waiver of the attorney-client privilege by implication under three circumstances where: (1) a client testifies concerning potions of the attorney-client communication; (2) a client places the attorney-client relationship directly at issue; and (3) a client asserts reliance on their attorney's advices as an element of a claim or defense.); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)(finding the attorney-client privilege is waived where the "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.").

   b.    **PLAINTIFF HAS NOT WAIVED THE ATTORNEY-CLIENT PRIVILEGE AND MATERIALS SUBPOENAED ARE OTHERWISE IRRELEVANT**

Plaintiff maintains that neither she, as the Executor of Mr. Davis' estate,  nor Mr. Davis has waived the

attorney-client privilege with respect to the materials Defendant requests in its subpoena served on the U.A.W. Legal Plan (Docket No. 60, pp. 3-4 of 4). Defendant disagrees and contends that Plaintiff's references to Mr. Davis' estate plan and will have placed Mr. Davis' entire estate plan at issue (Docket No. 62, pp. 2-3 of 4). Plaintiff argues that its references to Mr. Davis' will and estate planning did not reveal any substantive legal advice and cannot constitute waiver (Docket No. 64).

The United States Supreme Court has held that the attorney-client privilege continues after an individual's death. *Swidler & Berlin v. United States*, 524 U.S. 399, 405-07 (1998); *Ohio v. Doe*, 433 F.3d 502, 504 (6th Cir. 2006). Although the federal common law recognizes a testamentary exception to the attorney-client privilege, it is not applicable here because Mr. Davis' will is not being contested, Defendant is not a devisee under the will, and most importantly, Mr. Davis' intent during his estate planning is not relevant to the ERISA issue before this Court. *See Glover v. Patten*, 165 U.S. 394, 406 (1897)("we are of opinion that, in a suit between devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged."); *see also Laethem,* 2007 WL 2873981, at *4 (noting that subpoenas issued pursuant to FED. R. CIV. P. 45 are "subject to the general relevancy standard applicable to discovery under FED. R. CIV. P. 26(b)(1).")(citing *Syposs*, 181 F.R.D. at 226).

In a series of ERISA cases, the United States Supreme Court has consistently held that ERISA benefits must be distributed pursuant to plan beneficiary designations even where in conflict with state laws or divorce decrees. In *Boggs v. Boggs*, 520 U.S. 833, 835 (1997), the sons of the decedent Isaac Boggs and their late mother Dorothy Boggs sued their father's second wife Sandra, claiming that they were entitled to their father's ERISA plan benefits by way of a testamentary transfer from Dorothy, under Louisiana law, of her community property interest in the undistributed plan benefits. *Id.* at 836-838. The Supreme Court held that ERISA preempted Louisiana's community property law and determined that Sandra, as Isaac's surviving spouse, was

9

entitled to the benefits. *Id.* at 844-854.  Four years later, the Supreme Court held in *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 143 (2001), that ERISA preempted a Washington state statute which automatically revoked, upon divorce, any designation of a spouse as a beneficiary of a nonprobate asset. *Id.*  Most recently, the Supreme Court in *Kennedy v. Plan Adm'r For DuPont Savings & Inv. Plan et al.*, 555 U.S. 285, 868 (2009), held that a plan administrator properly disregarded a federal common law waiver, which was part of a divorce degree, waiving the divorced spouse's entitlement to her ex-husband's ERISA plan benefits, since the waiver conflicted with the beneficiary designation made in the former husband's benefit plan documents. *Id.*  The court in *Kennedy* reaffirmed that under ERISA, plan administrators have a duty to follow plan documents. *Id.* at 875-876.

After reviewing the record in this case and applicable legal precedent, the undersigned Magistrate is not persuaded  that the attorney-client privilege concerning U.A.W. Legal Plans representation in Mr. Davis' estate planning has been waived.  Despite Defendant's contention that Plaintiff has put such materials at issue, Defendant does not cite and this Court is otherwise unaware of any legal precedent finding waiver under the same or analogous circumstances.  To the extent that Plaintiff put Mr. Davis' will at issue by arguing that Defendant is not mentioned therein, Defendant has suffered no prejudice since the will is part of the record in this case.  Mr. Davis' will and estate planning is also irrelevant to the disposition of this case since the dispute before this Court relates to ERISA plan benefits.

Accordingly, the undersigned Magistrate finds the materials requested in Defendant's subpoena served on the U.A.W. Legal Plan are protected by the attorney-client privilege and that no applicable exception or waiver applies, which would permit Defendant to discover the information sought in its subpoena on U.A.W. Legal Plan.

10

## V.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate grants Plaintiff's Motion to Quash Subpoena and hereby orders that Defendant's subpoena on U.A.W. Legal Plan be quashed.

**IT IS SO ORDERED**.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: November 6, 2014

11