**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Anette Davis, Executor of the Estate of      :      Case No. 3:14 CV 113
Peter W. Davis, deceased,      :
     :
        Plaintiff,      :
     :
        v.      :
     :
Mary Ann Drake, et. al.,      :      **MEMORANDUM AND**
     :      **ORDER**
        Defendants.      :
     :

## I. INTRODUCTION

The parties in this case have consented to the jurisdiction of the undersigned Magistrate to conduct all proceedings and enter final judgment in this Employee Retirement Income Security Act (ERISA) case as set forth in 29 U.S.C. §1001, *et. seq.*  The Complaint includes state law claims for unjust enrichment, the imposition of a constructive trust, declaratory judgment, breach of contract, conversion, and injunctive relief (Docket No. 1).  The Court has jurisdiction over ERISA cases pursuant to 28 U.S.C. § 1331, and over the pendent state law claims under § 1367(a).  Pending before this Court are Plaintiff Anette Davis' ("Plaintiff") Motion For Summary Judgment With Memorandum In Support (Docket No. 49), Defendant Mary Ann Drake's ("Defendant") Opposition to  Motion For Summary Judgment and Cross-Motion For Summary Judgment (Docket No. 63), Plaintiff's Reply (Docket No. 69), and Defendant's Reply (Docket No. 70).

1

## II. Factual Background

Peter W. Davis ("Decedent" or "Mr. Davis") worked as an hourly employee at General Motors' (GM) Toledo Hydramatic Plant until his retirement in 2007 (Docket No. 49, p. 2 of 10).  As part of Mr. Davis' employment with GM, he was entitled to certain collectively bargained benefits during his retirement under a Life and Disability Benefits Program for Hourly Employees, which consisted of a life benefit insured by MetLife (a welfare benefit), and a Personal Savings Plan (a pension plan), under ERISA (Docket No. 13, p. 2 of 9; Docket No. 14, Attachment 1, p. 3 of 10).  On December 26, 1989, Mr. Davis married Defendant Drake (Docket No. 49, p. 2 of 10). At some point after the marriage, Mr. Davis filed a written designation with MetLife and GM naming Defendant Drake the sole beneficiary of the Policy and Plan upon his death (Docket No. 50, p. 1 of 7; Docket No. 14, Attachment 3).

On July 11, 1995, the marriage between Mr. Davis and Defendant Drake ended by a Final Judgment Entry of Divorce filed in the Court of Common Pleas of Lucas County, Ohio, Domestic Relations Division (Docket No. 1, Attachment 1).  Under the terms of the Final Judgment Entry of Divorce, Mr. Davis was awarded right, title and interest in his pension and IRA accounts without claim by Defendant Davis (Docket No. 1, Attachment 1, p. 14 of 15).  The divorce judgment also awarded both Mr. Davis and Defendant Drake their separate and individual savings accounts in their respective names without claim by the other (Docket No. 1, Attachment 1, p. 15 of 15).

## III.  Procedural History

On December 18, 2013, Plaintiff filed a Verified Complaint For Declaratory Judgment, Damages, and Injunctive Relief against Defendants Mary Ann Drake, Metropolitan Life Insurance Company ("MetLife"), and General Motors ("GM") in the Lucas County Court of Common Pleas, asserting state law claims and requesting injunctive relief, related to employee benefits offered by GM to Peter W. Davis (Docket No. 1, Attachment 1;

Docket No. 13).

A Joint Notice of Removal was filed on January 17, 2014, in the United States District Court for the Northern District of Ohio, Western Division, removing the case from the Lucas County Court of Common Pleas to federal court on grounds that the complaint included ERISA claims and benefits governed by federal law (Docket No. 1).

On February 4, 2014, Plaintiff filed a Renewed Motion For Preliminary Injunction and Brief in Support, requesting the United States District Court to grant a temporary restraining order against all defendants prohibiting them from disbursing or transferring any portion of the benefits in dispute to Defendant Drake (Docket No. 6).

A Pretrial Conference concerning Plaintiff's Motion for Preliminary Injunction was held on February 6, 2014, in which Senior U.S. District  Judge James G. Carr presided and ordered: (1) Defendants MetLife and GM to pay the funds at issue in this case into the Court's Escrow Fund; and (2) on notice of compliance with the Order, the defendants GM and MetLife would be dismissed, with prejudice (Docket No. 11; Docket No. 8).

On February 7, 2014, Defendant Mary Ann Drake filed her Answer, generally denying Plaintiff's claims and raising affirmative defenses including failure to state a claim upon which relief can be granted, and the equitable doctrines of waiver, estoppel and laches (Docket No. 9).  Defendant also asserted a counterclaim against Plaintiff arguing that she is entitled to the full payment of the benefits as the named beneficiary (Docket No. 9, p. 3 of 4).

On February 14, 2014, Defendant GM filed its Answer to Plaintiff's complaint generally denying the allegations and asserting affirmative defenses under ERISA (Docket No. 13).

On February 19, 2014,  Defendant MetLife deposited $45,590.11 with the Court pursuant to the Court's prior Order dated February 6, 2014 (Docket Sheet, 2/19/14).  Defendant GM on the other hand, filed a Motion

3

for Relief from the Court's Order of February 6, 2014, arguing that the Order contradicts ERISA's strict statutory anti-alienation rule, which obligates GM to pay the benefits to Mr. Davis' designated beneficiary, Defendant Drake (Docket No. 14; Docket No. 14, Attachment 1).

On February 20, 2014, Defendant MetLife, filed a Notice of Deposit With Proposed Stipulated Order of Dismissal, notifying the Court that it deposited, with the Registry of Court, $45,473 in Plan Benefits plus $117.11 in interest payable under the GM Life and Disability Plan pursuant to the Court's prior order and requesting that it be dismissed with prejudice from this case (Docket No. 16).

On February 25, 2014, Judge Carr entered an Order on Defendant GM's Motion For Relief from Order: (1) vacating the Court's February 6, 2014 Order; (2) directing GM to pay the pension plan benefits under the GM plan to the designated beneficiary; (3) ordering Defendant Drake to follow the Plan's procedures and requirements necessary to allow processing and distribution of the Plan benefits; and (4) dismissing with prejudice, all claims against Defendant MetLife in light of their payment into the Court's registry (Docket No. 17).

On February 26, 2014, Plaintiff filed its Answer to Defendant Drake's counterclaims generally denying the allegations and asserting affirmative defenses (Docket No. 18).   Plaintiff Davis and Defendant Drake also filed a Stipulated Judgment Entry For Supplemental Preliminary Injunction, on February 26, 2014, agreeing that upon receipt of the benefits from GM, Defendant Drake would give those funds to her counsel for deposit into his IOLTA account until further Order of the Court or consent of Plaintiff by her counsel (Docket No. 19). Judge Carr granted the parties' stipulation on June 12, 2014 (Docket No. 24).

On July 3, 2014, the parties consented to the jurisdiction of the undersigned Magistrate to conduct all proceedings and enter final judgment in this case pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73 (Docket Sheet, 7/3/2014).

On September 22, 2014, Plaintiff filed a Motion For Summary Judgment With Memorandum In Support (Docket No. 49), a Declaration of Anette Davis, Mr. Davis' form designating his plan beneficiary and Mr. Davis' will from April 2013 (Docket No. 50).  Defendant Drake filed a Memorandum in Opposition to Plaintiff's Motion For Summary Judgment and Cross-Motion for Summary Judgment on October 20, 2014 (Docket No. 63).  Plaintiff filed a Reply on November 10, 2014 (Docket No. 69) and Defendant filed a Reply on November 20, 2014 (Docket No. 70).

## IV.  ANALYSIS

### A.  PLAINTIFF'S ALLEGATIONS

Plaintiff asserts that she is entitled to summary judgment on the unjust enrichment, constructive trust, and declaratory judgment claims, arguing that: (1) the disposition of Mr. Davis' plan benefits are not preempted by ERISA; (2) under Ohio law, Defendant's retention of the benefits constitutes unjust enrichment; (3) Plaintiff is entitled to the remedy of a constructive trust under Ohio law; and (4) Plaintiff is entitled to declaratory judgment that Defendant waived all claims to the benefits (Docket No. 49).

### B.  DEFENDANT'S ALLEGATIONS

Defendant disagrees, contending that: (1) ERISA pre-empts the waiver contained in the Final Judgment Entry of Divorce and that the ERISA plan documents must control the disposition of benefits; (2) the waiver contained in the Final Judgment Entry of Divorce was superceded by Defendant and Mr. Davis' subsequent relationship; (3) Plaintiff is unable to maintain a claim for unjust enrichment because the estate has conferred no benefit upon Defendant; (4) constructive trusts are a remedy for unjust enrichment not an independent cause of action; and (5) Defendant is entitled to summary judgment on all Plaintiff's claims (Docket No. 63).

### C.  LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS

The standard of review applicable to motions for summary judgment is established by Federal Rule of

Civil Procedure 56 and the associated case law. *Miller v. Transfreight, LLC*, 2013 WL 4039033, at *1 (S.D. Ohio 2013). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c) (West 2014). Alternatively, summary judgment is denied "if there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Miller*, 2013 WL 4039033, at *1 (citing *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(*quoting Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

A fact is "material" if it might affect the outcome of the lawsuit. *Anderson*, 477 U.S. at 248. A material fact is "genuine," if it is such "that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[I]nferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *Eliadis, Inc.*, 65 F.Supp.2d at 664 (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The moving party bears the burden of making a prima facie showing that there is an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The reviewing court must examine the record to determine whether the moving party, "in depositions, answers to interrogatories, admissions, affidavits and the like has demonstrated 'the absence of a genuine issue of material fact' . . . and his entitlement to judgment as a matter of law." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(*quoting Celotex*, 447 U.S. at 323)(citation omitted)).

If the moving party meets its burden then the burden shifts to the non-moving party to show, "by affidavits or as otherwise provided under Rule 56 . . . *that there is a genuine issue for trial.*" *Banks*, 548 U.S. 529 (citation omitted)(emphasis in original). The nonmoving party must provide some evidence to demonstrate

6

that there is a genuine issue for trial beyond the pleadings themselves. *Celotex*, 477 U.S. at 324.  A non-moving

party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007)(*quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574,

586-87 (1986)).

In evaluating a motion for summary judgment, the judge must determine "whether a fair-minded jury

could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.  "The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Id*.

**D.    RELEVANT ERISA LAW**

**1.    EMPLOYEE BENEFIT PLANS**

ERISA governs employee benefit plans, including employee welfare benefit plans and employee

pension benefit plans.  *See* 29 U.S.C. §§ 1001(a), 1002(3) (West 2014).  Both types of plans are at issue in this

case.  An employee welfare benefit plan is defined in relevant part as:

> any plan, fund, or program . . . established or maintained by an employer or by an employee
> organization . . . to the extent that such plan, fund, or program was established or is maintained for
> the purpose of providing for its participants or their beneficiaries, through the purchase of insurance
> or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness,
> accident, disability, death or unemployment, or vacation benefits . . . or any benefit described in
> section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such
> pensions).

29 U.S.C. § 1002(1) (West 2014).  According to Defendant GM's filings in this case, Mr. Davis had both

welfare and pension plan benefits under GM's Life and Disability Benefits Program for Hourly Employees

(Docket No. 14, Attachment 1, p. 3 of 10).  The money deposited by MetLife with the Court in the amount of

$45,590.11, represents the proceeds of Mr. Davis' welfare plan benefit (Docket No. 14, Attachment 1, p. 3 of

10; Docket No. 16).  The other $128,063.10, which was paid to Defendant Drake by GM, consisted of the

7

proceeds from Mr. Davis' "ERISA-governed, qualified defined contribution pension plan." (Docket No. 14-1,

p. 3 of 10; Docket No. 42, Attachments 1 & 2).  An employee pension benefit plan is defined in relevant part as:

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization . . .that by its express terms or as a result of surrounding circumstances such plan, fund, or program . . . provides retirement income to employees.

29 U.S.C. § 1002(2) (West 2014).

Under ERISA, employee benefit plans must meet specific requirements, including establishing

procedures for operation and administration of the plan, naming fiduciaries to control and manage the plan, and

providing a basis for payments to and from the plan. 29 U.S.C. § 1102 (West 2014).   The fiduciaries of ERISA

benefit plans are expressly instructed to administer benefits  "in accordance with the documents and instruments

governing the plan." 29 U.S.C. § 1104(a)(1)(D) (West 2014); *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141,

147 (2001).  These fiduciary duties include providing benefits to participants and their beneficiaries. 29 U.S.C.

§ 1104(a)(1)(A) (West 2014).

## 2.    ERISA'S PRE-EMPTION PROVISION

"ERISA's pre-emption section, 29 U.S.C. § 1144(a), states that ERISA 'shall supersede any and all

State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA."

*Egelhoff*, 532 U.S. at 146.  "A law relates to an employee benefit plan 'if it has a connection with or reference

to such a plan.'" *Crabbs v. Copperweld Tubing Products Co.*, 114 F.3d 85, 90 (6th Cir. 1997)(*quoting Shaw v.

Delta Air Lines, Inc*., 463 U.S. 85, 87 (1983)).   A law has a connection with an employee plan under ERISA

"'even if the law is not specifically designed to affect such plans, or the effect is only indirect, and even if the

law is consistent with ERISA's substantive requirements.'" *Thiokol Corp. v. Roberts*, 76 F.3d 751, 754 (6th Cir.

1996)(*quoting District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 (1992)).  The term "State

law" as it is used in § 1144 includes "all laws, decisions, rules, regulations, or other State action having the

effect of law." 29 U.S.C. § 1144(c) (West 2014); *see also Nester v. Allegiance Healthcare Corp.*, 315 F.3d 610, 613 (6th Cir. 2003)(citation omitted)("Generally, ERISA broadly precludes any state law cause of action which relates to any employee benefit plan."). "[A]ny juridical complaint for recovery of any benefits allegedly due to the plaintiff under an employee benefit plan is strictly, and exclusively, governed by ERISA jurisprudence." *Id.* (*citing Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133, 137 (6th Cir. 1993); *Fisher v. Combustion Engineering, Inc.*, 976 F.2d 293, 296-97 (6th Cir. 1992)). However, an action does not relate to a plan for purposes of preemption when the effect is merely peripheral. *See Thiokol*, 76 F.3d at 754.

In a series of decisions, the United States Supreme Court has consistently held that ERISA pre-empts state law which impacts the payment of ERISA plan benefits to anyone other than the designated beneficiary. In *Boggs v. Boggs*, 520 U.S. 833, 835 (1997), the sons of the decedent Isaac Boggs and their late mother Dorothy Boggs sued Isaac's second wife Sandra, claiming that they were entitled to their father's ERISA plan benefits pursuant to a testamentary transfer from Dorothy, under Louisiana law, of her community property interest in Isaac's undistributed ERISA plan benefits. *Id.* at 836-838. The Supreme Court held that ERISA preempted Louisiana's community property law, determining that Sandra, as Isaac's surviving spouse, was entitled to the benefits which had been paid to her by the plan administrator. *Id.* at 844-854. In so holding in *Boggs*, the court wrote that "[i]t does not matter that respondents have sought to enforce their rights only after the retirement benefits have been distributed since their asserted rights are based on the theory that they had an interest in the undistributed pension plan benefits." *Id.* at 854. Four years later in *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 143 (2001), the Supreme Court held that ERISA preempted a Washington state statute which automatically revoked, upon divorce, any designation of a spouse as a beneficiary of a nonprobate asset. *Id.* In its analysis of *Egelhoff*, the Supreme Court reasoned that the Washington statute interfered with the payment of benefits, a central matter of ERISA plan administration and therefore was preempted. *Id.* at 148.

9

Although the court acknowledged that "[t]here is indeed a presumption against pre-emption in areas of traditional state regulation such as family law [or probate law] . . .[the] presumption can be overcome where, as here, Congress has made clear its desire for pre-emption." *Id.* at 151.

### 3.  ANTI-ALIENATION & ASSIGNMENT UNDER ERISA

In addition to its pre-emption provision, ERISA also contains an anti-alienation provision, which requires that ERISA *pension plan benefits* expressly provide that such benefits cannot be "assigned or alienated." 29 U.S.C. § 1056(d)(1) (West 2014)(emphasis added).  The pension plan at issue in this case contained such a prohibition, which states:

**9.01    Non-Assignability**

Except as otherwise may be provided by Section 7.06, no right or interest of any Participant under this Plan or in the Participants' Account shall be assignable or transferable, in whole or in part, either directly or by operation of law or otherwise, including, without limitation, by execution, levy, garnishment, attachment, pledge, bankruptcy, or in any other manner . . .

(Docket No. 14, Attachment 2, p. 78 of 127).  ERISA does not, however, extend any such anti-alienation or assignability prohibitions for welfare benefit plans. *Mackey v. Lanier Collection Agency Serv., Inc.*, 486 U.S. 825, 838 (1988).  In *Mackey*, the Supreme Court reasoned that Congress' decision to remain silent about welfare plan benefits in § 1056(d)(1), was evidence of their intent "not to preclude state-law attachment of ERISA welfare plan benefits." *Id.* at 838.  Two years later, in *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 367 (1990), the Supreme Court cited the distinction in *Mackey* while rejecting efforts to impose a constructive trust on pension plan benefits of a trustee who had pleaded guilty to embezzling funds. *Id.* at 376-377.  The Court held that there were no equitable exceptions to the § 1056(d) language prohibiting assignment or alienation of pension plan benefits. *Id.* at 366.

On remand from the Supreme Court, the Tenth Circuit Court of Appeals held that benefits are protected

10

by ERISA's anti-alienation provision "only so long as they are within the fiduciary responsibility of plan managers." *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1082 (10th Cir 1994)(en banc)(hereinafter "*Guidry II*"). The Tenth Circuit reasoned that ERISA's anti-alienation provision focuses on "benefits," and once paid, ERISA no longer applies. *Id.* at 83.

Following the Tenth Circuit's en banc decision in *Guidry II*, a number of Circuits, including the Sixth Circuit, have recognized similar distinctions. *See N.L.R.B. v. HH3 Trucking, Inc.*, 755 F.3d 468, 470 (7th Cir. 2014)("Five courts of appeals have agreed with the Tenth Circuit that § 206(d)(1) does not prevent the attachment or garnishment of funds after a pension plan has paid them to retirees.")(citing *Hoult v. Hoult*, 373 F.3d 47, 53–55 (1st Cir.2004); *Central States Pension Fund v. Howell*, 227 F.3d 672, 678–79 (6th Cir.2000); *Wright v. Riveland*, 219 F.3d 905, 919–21 (9th Cir.2000); *Robbins v. DeBuono*, 218 F.3d 197, 203 (2d Cir.2000); *Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville*, 16 F.3d 52, 54–56 (3d Cir.1994)). In *Central States*, the Sixth Circuit evaluated whether there were circumstances under which ERISA plan benefits may be subject to state laws of equity. *Central States*, 227 F.3d at 678-79. In *Central States* a husband and ERISA plan participant was in the process of getting a divorce from his wife when he died. *Id.* at 673. During the divorce proceedings, the State domestic relations court had issued a preliminary injunction precluding the husband from making any changes to his finances until the divorce was final. *Id.* Despite the State court's injunction, the husband changed his ERISA plan beneficiary designation, replacing his wife's name with those of his children. *Id.* In the lawsuit that resulted, the wife argued that she was entitled to the equitable remedy of a constructive trust since her husband had violated the State court's order. *Id.* at 678. In its analysis of the case, the Sixth Circuit observed:

> We have explicitly and repeatedly held that state court divorce decrees purporting to affect the benefits payable from an ERISA plan are preempted. *See McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir.1990); *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126 (6th Cir.1996) (decedent Alvin

> Pressley); *Czarski v. Bonk*, No. 96–1444, 1997 WL 535773 (6th Cir. Aug.28, 1997); *Metropolitan Life Ins. Co. v. Steffey*, No. 96–2239, 1997 WL 705235 (6th Cir. Nov.4, 1997); *Hendon v. E.I. Dupont De Nemours and Co.*, No. 96–6233, 1998 WL 199824 (6th Cir. Apr.13, 1998). In each of the cited cases, however, the surviving spouse had waived the right to receive benefits from the policies as part of a divorce settlement, but the deceased spouse had failed to change the beneficiary card. In each case, we held that the ERISA plan administrator must pay the ex-spouse the insurance proceeds despite the waiver in the divorce settlement. Under these circumstances, the law of this Circuit is clear—the beneficiary card controls whom the plan administrator must pay. *See McMillan*, 913 F.2d at 311–312 ("This clear statutory command, together with the plan provisions, answer the question; the documents control, and those name [the ex-spouse].")

*Id.* The Sixth Circuit went on to recognize, however, that the facts of *Central States* were different from those cases, holding that "once the [ERISA] benefits have been released to the properly designated beneficiary, the district court has the discretion to impose a constructive trust upon those benefits in accordance with applicable state law if equity so requires." *Id.* at 678-679.  While the ERISA benefit plan at issue in *Central States* was a welfare benefit plan, the Sixth Circuit dispelled any notion that ERISA pension plan benefits might be immune from similar remedies in *DaimlerChrysler Corp. v. Cox*, 447 F.3d 967, 968 (6th Cir. 2006).  In *DaimlerChrysler*, the Sixth Circuit recognized that "once a pension plan has sent benefit payments to a beneficiary and relinquished control of those payments, the attachment of those funds by a creditor does not constitute alienation." *Id.* at 975.

Although the Supreme Court has not yet addressed the propriety of this distinction, it recently referenced such efforts in a footnote in *Kennedy v. Plan Adm'r For DuPont Savings & Inv. Plan et al.*, 555 U.S. 285, 299 n.10 (2009).  In *Kennedy*, the court evaluated the effect of a federal common law waiver made pursuant to a divorce decree, waiving a former spouse's entitlement to her ex-husband's ERISA plan benefits despite plan documents designating the former spouse as the beneficiary.  *Id.* at 289-91.  The Supreme Court held, in relevant part, that the ERISA plan administrator did not err in paying the ex-husband's plan benefits to the former spouse since the administrator complied with its statutory duty under ERISA to pay benefits in conformity with plan documents. *Id.* 299-300. In a footnote, the majority did caution, however, that the decision

12

should not be construed to "express any view as to whether the Estate [in *Kennedy*] could have brought an action in state or federal court against [the former spouse] to obtain benefits after they were distributed." *Id.* at 299 n.10 (citing *Sweebe v. Sweebe*, 474 Mich. 151, 156-59 (Mich. 2006); *Pardee v. Pardee*, 112 P.3d 308, 313-316 (Okla. 2004)); *see also Boggs*, 520 U.S. at 854 (noting that it did not matter that respondents sought to enforce their rights after the ERISA benefits had been distributed since their case was premised on the theory that they had an interest in the undistributed ERISA plan benefits.).

E.    DISCUSSION

        This ERISA case presents unique challenges because its disposition has evolved over the pendency of the litigation.  At the time Plaintiff's Complaint was filed in State court, neither of Mr. Davis' ERISA plan benefits had been dispersed and thus were under the control of their respective ERISA plan administrators and subject to federal ERISA law.  Under those circumstances, the law of the Sixth Circuit is clear.  The divorce decree between Mr. Davis and Defendant is clearly pre-empted by ERISA and the plan benefits must be paid in accordance with the beneficiary designation.  *See Central States*, 227 F.3d at 676-77; *McMillian*, 913 F.2d at 311-12; *Pressley*, 82 F.3d at 130.  The facts of this case, however, changed following removal from the state court and payment of the benefits.

        After successfully removing this case from the Lucas County Court of Common Pleas to this Court, Defendants MetLife and GM were ordered by the assigned U.S. District  Judge to disburse Mr. Davis' ERISA plan benefits (Docket No. 8 & 17).   Once the welfare and pension plan benefits were paid, Plaintiff argues that federal ERISA law no longer controls, subjecting the proceeds of those benefits to the Sixth Circuit's holding in *Central States* (Docket No. 49, pp.4-6 of 10; Docket No. 69, pp. 2-5 of 10).  Defendant, on the other hand, does not address the *Central States* decision or acknowledge any distinction in the law concerning the applicability of ERISA before and after benefits are distributed to beneficiaries (Docket No. 63).

The Sixth Circuit's decisions in both *Central States* and *DaimlerChrysler* recognize an important distinction in ERISA jurisprudence, extending ERISA protections only so far as such benefits are within the control of plan administrators.  Once such benefits are paid to the plan participants or beneficiaries, as is the case here, those benefits are subject to equitable remedies.  Significantly, the Sixth Circuit's holding in *Central States* left the decision to impose a constructive trust to the discretion of the district court "in accordance with applicable state law if equity so requires." *Central States* 227 F.3d at 679.

1. **PLAINTIFF'S STATE LAW CLAIMS**

In Plaintiff's Motion for Summary Judgment, she argues that she is entitled to summary judgment on her unjust enrichment (first), constructive trust (second), and declaratory judgment (third) claims (Docket No. 49, p. 4 of 10; Docket No. 69, p. 5 of 10).  Defendant opposes Plaintiff's Motion for Summary Judgment and asserts a cross-motion for summary judgment on all of Plaintiff's claims (Docket No. 63).

a. **UNJUST ENRICHMENT**

A claim for unjust enrichment is an equitable action based on quasi contract principles.  *See Hummel v. Hummel*, 133 Ohio St. 520, 527-28 (Ohio 1938); *Nat'l City Bank, Norwalk v. Stang*, 84 Ohio App.3d 764, 766-67 (Ohio Ct. App. 1992).  Unjust enrichment "arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain." *Hambleton et al. v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (Ohio 1984)(internal quotation and citation omitted).  To maintain a claim for unjust enrichment under Ohio law, a Plaintiff must show that (1) it has conferred a benefit upon Defendant; (2) Defendant has knowledge of the benefit; and (3) Defendant has retained the benefit under circumstances where it would be unjust to do so without payment. *Hambleton*, 12 Ohio St.3d at 183 (citing *Hummel*, 133 Ohio St. at 525).

Plaintiff maintains that if Defendant is permitted to retain Mr. Davis' plan benefits, Defendant will be unjustly enriched since Defendant previously negotiated away her rights to such benefits during her divorce

14

from Mr. Davis in July 1995 (Docket No. 1, Attachment 1, pp. 2-4 of 15; Docket No. 49, pp. 6-7 of 10).  To

support her claim, Plaintiff cites two provisions from the Final Judgment Entry of Divorce from Defendant's

divorce from Mr. Davis in July 1995, which provides:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant, Peter W. Davis, is awarded all right, title and/or interest which he might have [sic] pension and/or IRA accounts without claim by the Plaintiff thereto.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiff, Mary Ann Davis, and the Defendant, Peter W. Davis, are awarded any life insurance benefits in their respective names without claim by the other thereto.

(Docket No. 49, p. 6 of 10).  Defendant disagrees and maintains that the Final Judgment Entry of Divorce is

pre-empted by ERISA (Docket No. 63, pp. 5-6; 9 of 13).  Defendant also contends, in the alternative, that

Plaintiff is unable to maintain a claim for unjust enrichment because Plaintiff has not conferred a benefit upon

Defendant and is not entitled to imposition of a constructive trust since it is a remedy for unjust enrichment

(Docket No. 63, pp. 8-10).  In support of Defendant's argument she cites *Kmatz v. Metro. Life Ins. Co.*, 2006

WL 1209362 (S.D. Ohio 2006), a non-binding and unpublished decision from the Southern District of Ohio

(Docket No. 63, p. 8 of 13).

In *Kmatz*, the estate of the decedent (and ERISA plan participant) sued the insurance company and the

decedent's former spouse, alleging improper payment of life and accidental death (ERISA) benefits. *Kmatz*,

2006 WL 1209362 at *1.  One of the five causes of action brought by the estate included a claim for unjust

enrichment against the decedent's former spouse. *Id.*  In evaluating the unjust enrichment claim, the district

court held that the estate could not show that it conferred a benefit upon the former spouse. *Id.* at 14  The

district court reasoned that it was the decedent not the estate that had conferred the benefit through his

designation of the former spouse as the beneficiary. *Id.*  In so holding, the court in *Kmatz* cited no supporting

precedent for its finding and does not indicate whether it examined applicable law concerning standing.

15

### b.  STANDING

"[S]tanding to sue in any Article III court is . . . a federal question which does not depend on the party's prior standing in state court." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 495 (6th Cir. 1999)(*quoting Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985)).  The Sixth Circuit has previously explained that "'standing is a matter of federal not state . . . law.'" *Coyne*, 183 F.3d at 495 (*quoting City Communications, Inc. v. City of Detroit,* 888 F.2d 1081, 1086 (6th Cir. 1989).  To meet Article III standing, a Plaintiff must meet three requirements:

> A plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. Hence, the "irreducible minimum" constitutional requirements for standing are proof of injury in fact, causation, and redressability. A plaintiff bears the burden of demonstrating standing and must plead its components with specificity.

*Campbell v. PMI Food Equipment Group, Inc*., 509 F.3d 776, 782-83 (6th Cir. 2007)(*quoting Coyne*, 183 F.3d at 494)(citations omitted).  "Where the party does not rely on any specific statute authorizing invocation of judicial process, the question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy.'" *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972)(*quoting Baker v. Carr*, 369 U.S. 186, 204 (1962)).  The standing requirement is meant "to ensure that the dispute sought to be adjudicated will be presented in an adversarial context and in a form historically viewed as capable of judicial resolution**"** *Id.* (*quoting Flast v. Cohen*, 392 U.S. 83, 101 (1968)).

The Federal Rules of Civil Procedure authorize an executor to prosecute an action in his/ her own name as a real party in interest in their representative capacity.  FED. R. CIV. P. 17(a)(1)(A) (West 2014).  The rules also provide that the capacity to sue or be sued is determined by the law of the state where the court is located.  FED. R. CIV. P. 17(b)(3) (West 2014).  Ohio statutory law sets forth that "[i]n addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for

deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto." Ohio Rev. Code § 2305.21 (2014).  With respect to the common law actions surviving death, the Supreme Court of Ohio has observed:

> As a general rule, at common law, actions ex contractu survived, while actions ex delicto did not. To this there were exceptions. One was that, in actions ex delicto, so far as the act complained of resulted in damage to property, the action survived. Another was, that though the action was founded on contract as a suit for breach of promise of marriage, yet if the damage resulting was to the person, and not to the property, the action did not survive.

*Loveman v. Hamilton*, 66 Ohio St.2d 183, 184-85 (Ohio 1981)(*quoting Village of Cardington v. Fredericks' Adm'r*, 46 Ohio St. 442, 448 (Ohio 1889)(citation and internal quotation marks omitted).  "Personal property is not limited to tangible goods and chattels. . . . Intangible choses in action, such as a contract right and the right to bring a cause of action in a court of law, are also considered personal property." *Loveman*, 66 Ohio St.2d at 185 (citations omitted); *see also Porter v. Household Finance Corp. of Columbus*, 385 F.Supp. 336, 344 (S.D. Ohio 1974)("The modern common law rule of survivability is that tort actions for person wrongs (e.g., slander, liber and malicious prosecution) do not survive, while actions affecting property rights or monetary interests do survive.")(citation omitted).

In response to Defendant's challenge concerning Plaintiff's standing to maintain actions for unjust enrichment and breach of contract, Plaintiff cites *Hopper v. Nicholas*, 106 Ohio St. 292, 302 (Ohio 1922) and *Briedenbach v. Mayfield*, 37 Ohio St.3d 138, 141-142 (Ohio 1988), *overruled on other grounds by State ex rel. Nossal v. Terex Div. Of I.B.H.*, 86 Ohio St.3d 175 (Ohio 1999), to argue that as Mr. Davis' executor and legal representative, she stands in the shoes of Mr. Davis (Docket No. 69, p. 5 of 10).  In reviewing Ohio law on this issue, the Court recognizes that Ohio courts have repeatedly upheld such principles. *See Santa v. Ohio Dept. Of Human Serv.*, 136 Ohio App.3d 190, 195 (Ohio Ct. App. 2000)("An executor may ordinarily prosecute in his representative capacity any cause which his decedent could have instituted.  The executor of an estate, as a legal

17

representative, settles the decedent's affairs and stands in [the decedent's] shoes' as far as entitlement to benefits is concerned.")(citations omitted); *Kelley v. Ferraro*, 188 Ohio App.3d 734, 747 (Ohio Ct. App. 2010); *Hosfelt v. Miller*, 2000 WL 1741909 at *4 (Ohio Ct. App. 2000).

Accordingly, the undersigned Magistrate finds, as a matter of law, that Plaintiff has standing to maintain her unjust enrichment claim. The Court also finds, viewing the facts in a light most favorable to the non-moving Defendant, that there is no genuine issue of material fact concerning Mr. Davis' having conferred a benefit upon Defendant, by virtue of his designation of Defendant as the beneficiary of his ERISA plan benefits on January 26, 1990 (Docket No. 14, Attachment 3; Docket No. 50, p. 3 of 7). Since the Court is persuaded that Plaintiff, as Mr. Davis' executor, stands in his shoes, the undersigned Magistrate finds that Plaintiff has conferred a benefit to Defendant, satisfying the first element of a claim for unjust enrichment.

With respect to the second element of an unjust enrichment claim, the issue of Defendant's knowledge of the benefit conferred, Plaintiff cites to Defendant's deposition, in which she testified that she became aware that Mr. Davis had designated her the beneficiary of his plan benefits in December 2013 (Docket No. 49, p. 7 of 10). In its opposition, Defendant offers no argument concerning Defendant's knowledge in its analysis of Plaintiff's unjust enrichment claim (Docket No. 63). Therefore, pursuant to Fed. R. Civ. P. 56(e)(2), the undersigned Magistrate considers the fact of Defendant's knowledge as undisputed.

In addressing the final element, Plaintiff cites to the terms of Defendant and Mr. Davis' Final Judgment Entry of Divorce and argues that allowing Defendant to retain Mr. Davis' plan benefits would unjustly enrich her since she negotiated away her rights to make claims against those benefits (Docket No. 49, pp. 6-7 of 10; Docket No. 69; pp. 6-7 of 10). Defendant disagrees and contends that it is not unjust for the Defendant to retain the benefits given Mr. Davis' continued relationship with Defendant and his alleged promises to take care of Defendant after his death (Docket No. 63, pp. 9-10 of 13). Defendant does not, however, cite any legal

18

precedent to support her assertion (Docket No. 63).

Mr. Davis' relationship with Defendant following their divorce in July 1995 and any alleged promises Mr. Davis might have made to take care of Defendant after his death are of no legal significance. Assuming both facts were true, neither has any legal effect on the Final Judgment Entry of Divorce and provisions waiving Defendant's claims to such benefits. "A separation agreement is a contract and such contract, if incorporated in a decree of divorce, becomes a judgment with force and effect of any judgment." *Vaught v. Vaught*, 2 Ohio App.3d 264, 266 (Ohio Ct. App. 1981)(citing *Weeden v. Weeden*, 116 Ohio St. 524, 525 (Ohio 1927)) "Such a judgment embodies the final determination of the court of the rights of the parties upon all matters presented by the record." *Vaught*, 2 Ohio App.3d at 266 (citing 32 Ohio Jur. 2d § 178; *Conrad v. Everich*, 50 Ohio St. 476 (Ohio 1893)). Where a judgment is final and binding upon the parties, the rule of finality of judgments applies. *Id.*

> "This rule of finality of judgments is especially applicable to divorce judgments where there is an agreement which is incorporated into the journal entry of the trial court and where the trial court has not reserved jurisdiction to modify. The reason that such a decree is final and the court does not have continuing jurisdiction to modify it is that the parties voluntarily entered into a legally binding and enforceable contract. When parties enter into an agreement and it is submitted to the court, approved, and incorporated into a divorce decree, justice requires that the agreement be binding upon both parties. *Newman v. Newman* (1954), 161 Ohio St. 247 [118 N.E.2d 649, 53 O.O. 135]."

*Vaught*, 2 Ohio App.3d at 266 (*quoting Popovic v. Popovic*, 45 Ohio App.2d 57, 64 (Ohio App. Ct. 1975)). In cases involving state court judgments, it is well settled that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Since ERISA no longer controls the disposition of benefits in this case by virtue of the payments made, the undersigned Magistrate must give effect to the Ohio domestic relations court's Final Judgment Entry of Divorce. *See Central States*, 227 F.3d at 678-79; *DaimlerChrysler,* 447 F.3d at 975.

19

The plain language of Final Judgment Entry of Divorce reflects that its terms are the result of "a full and complete settlement" reached by the decedent, Mr. Davis, Defendant and their respective attorneys (Docket No. 1, Attachment 1, p. 9 of 15).  The Judgment contains the signature of the presiding Ohio domestic relations judge, both parties and their respective attorneys in the case (Docket No. 1, Attachment 1, p. 15 of 15).  The relevant terms of the Final Judgment Entry of Divorce provide that Mr. Davis "is awarded all rights, title and/or interest" in his pension and/or IRA accounts and any life insurance benefits in his own name (Docket No. 1, Attachment 1, p. 14 of 15).  The Judgment also includes language specifically precluding Defendant from making any claim against those assets (Docket No. 1, Attachment 1, pp. 14-15 of 15).  The benefits at issue in this case consist of the dispersed proceeds from pension and life insurance benefits under GM's Life and Disability Benefits Program for Hourly Employees, which are precisely the benefits that Defendant is expressly precluded from making claims against under the provisions of the Judgment Entry of Divorce (Docket No. 1, Attachment 1, pp. 2-3; 14 of 15).

Accordingly, the undersigned Magistrate finds, viewing the facts in a light most favorable to Defendant, that there is no genuine issue of material fact concerning the elements of Plaintiff's unjust enrichment claim, therefore entitling Plaintiff to summary judgment on her claim.

### c.    CONSTRUCTIVE TRUST

Plaintiff also moves for summary judgment on its second claim seeking the imposition of a constructive trust on Mr. Davis' ERISA plan benefits (Docket No. 49, pp. 7-8 of 10).  Defendant opposes Plaintiff's motion and argues, citing *Gaymar Industries, Inc. v. FirstMerit Bank, N.A.*, 2008 WL 5705709 at *6 (N.D. Ohio 2008), that a constructive trust is not an independent cause of action, but is instead a remedy for unjust enrichment. *Id.* For the reasons that follow, the undersigned Magistrate finds that Ohio law permits Plaintiff to assert a claim seeking the imposition of a constructive trust and is entitled to summary judgment on the claim.

20

"A constructive trust is a 'trust by operation of law which arises contrary to intention and in vitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.'" *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 280-281 (Ohio 2006)(*quoting Ferguson v. Owens*, 9 Ohio St.3d 223, 225 (Ohio 1984)).  "A constructive trust is an equitable remedy that protects against unjust enrichment and is usually invoked when property has been obtained by fraud." *Id.* at 281 (citation omitted).  A constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." *Id.* (citation and internal quotation marks omitted).  "The party seeking to have a constructive trust imposed bears the burden of proof by clear and convincing evidence." *Id.* (citing *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 96 Ohio St.3d 118 (Ohio 2002)("'If the evidence is doubtful or capable of reasonable explanation upon a theory other than the existence of the trust, it is not sufficient to support a decree declaring and enforcing the trust'")(citation omitted)).  "A constructive trust may not be impressed, however, just because there has been a moral wrong or abuse of a business or other relationship; rather it requires a showing of a wrongful acquisition or retention of property." *Sorgen v. Sorgen*, 1995 WL 136203 at *4 (Ohio Ct. App. 1995)(citing *Croston v. Croston*, 18 Ohio App.2d 159 (Ohio Ct. App. 1969)).

In the unpublished *Gaymar Industries* decision cited by Defendant, the district court held that a constructive trust is not an independent cause of action, citing three unpublished decisions from the Southern District of Ohio. *See Gaymar Industries, Inc*., 2008 WL 5705709 at *6 (citing *Morgan v. Del Global Tech. Corp*., 2007 WL 3227068 at *18 n.13 (S.D. Ohio 2007); *Rorig v. Thiemann*, 2007 WL 2462653 at *10 (S.D. Ohio 2007); *Kmatz*, 2006 WL 1209362 at *14).  The Supreme Court of Ohio has held to the contrary,

21

recognizing a distinction between the imposition of a constructive trust as a remedy and as a cause of action under circumstances where equity so requires, noting:

> A constructive trust is, in the main, an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud. However, a constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud.

> In applying the theories of constructive trusts, courts also apply the well known equitable maxim, "equity regards done that which ought to be done."

> Although this case presents issues somewhat novel to the reported decisions of this court, we find that other jurisdictions have been confronted with somewhat similar questions, and have applied the doctrine of constructive trust in situations involving after-acquired life insurance policies in determining the equities as between the title owner of such policies and those who were to be named beneficiaries by the terms of a separation agreement embodied within a divorce decree.

*Ferguson v. Owens*, 9 Ohio St.3d 223, 226 (Ohio 1984)(citing *Travelers Inc. Co. v. Daniels*, 667 F.2d 572, 573 (7th Cir. 1981); *Appelman v. Appelman*, 87 Ill.App.3d 749, 754 (Ill. App. Ct. 1980); *Brunnenmeyer v. Mass. Mut. Life Ins. Co.*, 66 Ill.App.3d 315, 316 (Ill. App. Ct. 1978); *Lincoln Nat'l Life Ins. Co. v. Watson*, 71 Ill.App. 3d 900, 902 (Ill. App. Ct. 1979); *McKissick v. McKissick*, 560 P.2d 1366, 1369 (Nev. 1977); *Gen. Am. Life Ins. Co. v. Rogers*, 539 S.W.2d 693, 964 (Mo. Ct. App. 1976))(citations omitted); *see also City of Findlay v. Hotels.Com, L.P.*, 441 F.Supp.2d 855, 864 (N.D. Ohio)(finding plaintiff had alleged sufficient facts to survive dismissal of its constructive trust cause of action); *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 196 (Ohio 2009)(referencing the imposition of a constructive trust, as both a remedy and cause of action, in discussing the statute of limitations); *Moore v. Moore*, 175 Ohio App.3d 1, 13-15 (Ohio Ct. App. 2008)(affirming the trial court's imposition of a constructive trust in a divorce case to prevent defendant from being unjustly enriched). In light of the foregoing precedent, the undersigned Magistrate declines to adopt the holding from the unpublished *Gaymar Industries* and finds that under Ohio law, Plaintiff may assert a claim seeking to impose a constructive trust.

As detailed in the Court's foregoing analysis of Plaintiff's unjust enrichment claim, Defendant's contentions concerning Mr. Davis' relationship and alleged promises to Defendant are legally irrelevant in light of the terms of the Final Judgment Entry of Divorce. *See supra* pp. 19-20. The plain language of that judgment clearly awards Mr. Davis all right, title and/or interest in his pension accounts and life insurance benefits without claim from Defendant (Docket No. 1, Attachment 1, p. 14 of 15). To now allow Defendant to retain those benefits would require this Court to ignore the effect of the State court's judgment, depriving Mr. Davis' estate of the benefits that he bargained for as part of the settlement in his divorce case. Therefore, the undersigned Magistrate finds that there is no genuine issue of material fact concerning Plaintiff's constructive trust claim and that Plaintiff has shown by clear and convincing evidence that the imposition of a constructive trust over the proceeds of Mr. Davis' pension and welfare plan benefits is warranted.

### d. DECLARATORY JUDGMENT

Finally, Plaintiff argues that she is entitled to summary judgment on her third cause of action for declaratory judgment on the basis that Defendant knowingly and voluntarily consented to the terms of the Final Judgment Entry of Divorce releasing all of her right, title and interest in the Mr. Davis' plan benefits (Docket No. 1, Attachment 1, pp. 4-5 of 15). Plaintiff concludes that the estate is entitled to a declaration that Defendant has no right, title and interest in Mr. Davis' policy or plan (Docket No. 1, Attachment 1, p. 5 of 15). Defendant neither addresses nor advances any argument or defense concerning this claim (Docket No. 63). For the reasons that follow, however, the undersigned Magistrate denies Plaintiff's Motion for Summary Judgment on this claim.

"It is a general rule that the granting of declaratory relief is a matter for judicial discretion." *Bilyeu v. Motorists Mut. Ins.* Co., 36 Ohio St.2d 35, 37 (Ohio 1973)(citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)). Under Ohio law, an action for declaratory judgment is pursuant to Chapter 2721 of the Ohio Revised

Code.  In *Arnott v. Arnott*, 132 Ohio St.3d 401, 401 (2012), the Supreme Court of Ohio wrote of declaratory

judgments:

> Although broad in scope, the declaratory judgment statutes are not without limitation.  Most significantly, in keeping with the long-standing tradition that a court does not render advisory opinions, they allow the filing of a declaratory judgment only to decide "an actual controversy, the resolution of which will confer certain rights or status upon the litigants." *Corron v. Corron*, (1988), 40 Ohio St.3d 75, 79, 531 N.E.2d 708.  Not every conceivable controversy is an actual one.  As the First District aptly noted, in order for a justiciable question to exist, "'[t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical events . . . and the threat to his position must be actual and genuine and not merely possible or remote.'" *League for Preservation of Civil Rights v. Cincinnati* (1940), 64 Ohio App. 195, 197, 17 O.O. 424, 28 N.E.2d 660, *quoting* Borchard, Declaratory Judgments (1934) 40.

*Arnott*, 132 Ohio St.3d at 404 (*quoting Mid-American Fire & Casualty Co. v. Heasley*, 113 Ohio St.3d 133, 136

(Ohio 2007).

Once again the Court is confronted with the Final Judgment Entry of Divorce, which clearly precludes

Defendant from asserting any claim against Mr. Davis' pension and life insurance *benefits* (Docket No. 1,

Attachment 1, p. 14 of 15). (emphasis added).  In Plaintiff's Complaint, however, she seeks declaratory

judgment from this Court that Defendant has no right, title, and interest in the *policy or plan* (Docket No. 1,

Attachment 1, p. 5 of 15). (emphasis added).  Rights, title, and interests in ERISA policies or plans are defined

by both federal statute and each plan's administration procedures. *See* 29 U.S.C. §§ 1102, 1002, 1132 (West

2014).  Any efforts, including by this Court, to affect the payment of ERISA plan benefits to plan participants

and beneficiaries is clearly pre-empted pursuant to 29 U.S.C. § 1144(a). *See Boggs*, 520 U.S. at 835; *Egelhoff*,

532 U.S. at 144; *Kennedy*, 555 U.S. at 868.   Notwithstanding pre-emption, the claim is otherwise moot given

that Mr. Davis' pension and welfare benefit plans have been paid.

Accordingly, the Court finds that Plaintiff is not entitled to summary judgement on her declaratory

judgment claim because it is contrary to law and moot.  For those reasons, the undersigned Magistrate denies

Plaintiff's Motion for Summary Judgment on the claim.

24

## 2. DEFENDANT DRAKE'S CROSS-MOTION FOR SUMMARY JUDGMENT

In its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Defendant asserts a cross-motion for summary judgment, arguing that Plaintiff has failed to establish that she is entitled to summary judgment and that viewing the facts in a light most favorable to Plaintiff, Defendant is entitled to summary judgment on all of Plaintiff's claims (Docket No. 63, pp 11-12 of 13). Defendant bases its assertion on *Kmatz*, the unpublished, non-binding decision out of the Southern District of Ohio (Docket No. 63, p. 12 of 13). In Plaintiff's Reply, she opposes Defendant's cross-motion for summary judgment and observes that Defendant has failed to address any of the elements of Plaintiff's claims, provides no analysis, and only cites *Kmatz* in support of its motion (Docket No. 69, pp. 8-9 of 10).

Rather than citing to specific materials in the record, Defendant requests that the Court analyze the facts of this case in light of the ruling in *Kmatz*, arguing that it is persuasive and that "the facts are at least as compelling in the present case as those in *Kmatz*" (Docket No. 63, p. 12 of 13). Defendant also contends that even if "one disputes the scope and nature of Drake's and Mr. Davis' post-divorce relationship, under the rule from *Kmatz*, those facts would not be material" (Docket No. 63, p. 12 of 13). Defendant does not, however, offer any insight concerning which rule from *Kmatz* she is referring to or how this Court should apply the rule to this case (Docket No. 63). The Sixth Circuit has previously observed, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)(*quoting Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)(citation and internal quotation marks omitted).

Accordingly, the undersigned Magistrate denies Defendant's cross-motion for summary judgment.

## V.    CONCLUSION

For the foregoing reasons the undersigned Magistrate hereby grants Plaintiff's Motion for Summary Judgment on her unjust enrichment and constructive trust claims, denies Plaintiff's Motion for Summary Judgment on her declaratory judgment claim, and denies Defendant's Cross-Motion for Summary Judgment. Since Plaintiff's claims for breach of contract, conversion, and injunctive relief remain unresolved in this case, the undersigned Magistrate orders that the proceeds of Mr. Davis' pension and welfare benefit plans remain under the control of their respective trustees, pursuant to the constructive trust and this Court's prior orders and stipulations.

The Court further schedules a telephone status conference for **MONDAY, DECEMBER 29, 2014 at 2:30 p.m.**

**IT IS SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: December 18, 2014

26